IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| IN RE ATLAS ROOFING CORPORATION CHALET SHINGLE PRODUCTS LIABILITY LITIGATION | MDL DOCKET NO. 2495 1:13-md-2495-TWT |
| MICHAEL MAZZA, et al., Plaintiffs, v. ATLAS ROOFING CORPORATION, Defendant. | CIVIL ACTION FILE NO. 1:13-CV-4218-TWT |

## OPINION AND ORDER

This action arises out of the marketing and sale of allegedly defective roofing shingles. It is before the Court on the Defendant's Motion for Summary Judgment as to the Plaintiff Michael Mazza [Doc. 101], the Defendant's Motion for Summary Judgment as to the Plaintiff Robert Johnson [Doc. 102], and the Defendant's Motion for Summary Judgment as to the Plaintiff Linda Krehlik [Doc. 103]. For the reasons set forth below, the Defendant's Motion for Summary Judgment as to the Plaintiff Michael Mazza [Doc. 101] is GRANTED in part and DENIED in part, the Defendant's Motion for Summary Judgment as to the Plaintiff Robert Johnson [Doc. 102] is GRANTED in part and DENIED in part, and the Defendant's Motion for Partial Summary Judgment as to the Plaintiff Linda Krehlik [Doc. 103] is GRANTED.

# I. Background

The Plaintiffs Michael Mazza, Robert Johnson, and Linda Krehlik are the owners of homes containing Atlas Shingles (the "Shingles").[1] The Defendant Atlas Roofing Corporation designed, manufactured, and sold the Shingles.[2] The Defendant developed the Shingles in the 1990s as a line of "overlay" products intended to provide an affordable shingle with the look of the more expensive architectural shingles.[3] The Defendant provided a Limited Shingle Warranty (the "Atlas Limited Warranty") in conjunction with the sale of the Shingles.[4] This Atlas Limited Warranty, which constituted the owner's "sole and exclusive remedy," contained certain conditions for asserting a warranty claim with the Defendant.[5] In 2010, the Defendant discontinued sales of the Shingles.[6] The Plaintiffs allege that the Shingles are defective in design, and filed this action seeking to represent a class of homeowners who own homes with the Shingles.

---

[1]     It should be noted that – for purposes of this lawsuit – Chalet/Stratford Shingles are indistinguishable. *See* Primary Mot. for Class Cert. [Doc. 57], Ex. Tab 14, Thomas Dep., at 35 under No. 13-cv-02195-TWT. The differences between the two Shingles relate to aesthetics, not design. *Id.*

[2]     Pls.' Statement of Additional Material Facts ¶¶ 1-2.

[3]     *Id.* ¶ 2.

[4]     Def.'s Mot. for Summ. J. as to Mazza, Ex. F [Doc. 101-8].

[5]     As discussed below, the Plaintiffs now dispute the applicability of the Atlas Limited Warranty to their claims.

[6]     Pls.' Statement of Additional Material Facts ¶ 28.

The Plaintiff Michael Mazza is the first owner of his single family home in Tennessee.[7] In 2004, Mazza purchased his home from a builder as a new construction.[8] Mazza's builder selected and purchased the Shingles installed on the roof, prior to Mazza closing on the house.[9] In 2010, Mazza noticed blistering on the Shingles.[10] Mazza's roof also experienced five leaks.[11] Each of these leaks occurred beneath areas of his roof with "valleys," and Mazza repaired the interior portions of his home by replacing the insulation, drying out the decking, and painting.[12] After being told by roofers about alleged problems with the Shingles, Mazza contacted the Defendant by telephone in June 2013 to make a warranty claim.[13] In the warranty claim, Mazza complained of "blistering" occurring on the Shingles.[14] This warranty claim was the only time that Mazza and the Defendant directly communicated.[15] On August 28, 2013, the Defendant responded to Mazza's warranty claim, and requested that he submit sample

---

[7]   Def.'s Statement of Material Facts as to Mazza ¶ 1.

[8]   *Id.*

[9]   *Id.* ¶ 3.

[10]   *Id.* ¶ 9.

[11]   *Id.* ¶ 10.

[12]   *Id.* ¶¶ 10-11.

[13]   *Id.* ¶ 13.

[14]   *Id.* ¶ 14.

[15]   *Id.* ¶ 4.

Shingles from his roof.[16] Mazza refused to send a sample, and the Defendant denied Mazza's warranty claim.[17]

The Plaintiff Robert Johnson purchased his house in Tennessee from a builder, Richard Grant, in 2006.[18] The Shingles were installed on the roof of Johnson's house when it was constructed in 2006.[19] Johnson did not select the Shingles for his house, and never saw any advertising or marketing materials from the Defendant.[20] Instead, the builder selected, purchased, and installed the Shingles on the house.[21] The only communications between Johnson and the Defendant were with regard to his warranty claim in June 2013.[22] In his warranty claim, Johnson complained that the Shingles on his roof were experiencing "cracking."[23]

The Plaintiff Linda Krehlik and her husband Brian Krehlik purchased their house in Murfreesboro, Tennessee from a builder in November 2005.[24] The

---

[16]     *Id.* ¶ 16.

[17]     *Id.* ¶ 17; Pls.' Statement of Additional Material Facts ¶ 40.

[18]     Def.'s Statement of Material Facts as to Johnson ¶ 1.

[19]     *Id.* ¶ 2.

[20]     *Id.* ¶¶ 6-8.

[21]     *Id.* ¶ 7.

[22]     *Id.* ¶¶ 9, 21.

[23]     *Id.* ¶ 22.

[24]     Def.'s Statement of Material Facts as to Krehlik ¶ 1.

builder of their house, Tri-Star Builders, selected the Shingles for the roof, and installed them in July 2005, prior to the Krehliks' closing on the house.[25] Krehlik claims that she selected a specific color of the Shingles after viewing a sample board of shingles.[26] The Krehliks' home never showed signs of a roof leak, and several contractors who inspected the roof never reported any signs of water damage.[27] In April 2013, Krehlik filed a warranty claim with the Defendant.[28] Then, on June 5, 2013, Krehlik submitted a "claim package" to the Defendant describing problems with the Shingles as "blistering, cracking, falling off, loose, deteriorating, asphalt/pebbles coming off extensively."[29] On August 2, 2013, the Defendant denied Krehlik's warranty claim because the roof on her home had already been replaced.[30] In June 2013, prior to filing this lawsuit, the Krehliks replaced the Shingles on their roof.[31] The Krehliks hired Morris Bros. Construction, which was also working on a porch addition to their house, to

---

[25]    *Id.* ¶ 2.

[26]    Pls.' Statement of Additional Material Facts ¶ 43.

[27]    Def.'s Statement of Material Facts as to Krehlik ¶¶ 18-19.

[28]    Pls.' Statement of Additional Material Facts ¶ 46.

[29]    Def.'s Statement of Material Facts as to Krehlik ¶ 28.

[30]    *Id.* ¶ 30.

[31]    *Id.* ¶ 8.

replace the roof.[32] Morris Bros. replaced the Shingles before the Defendant denied their warranty claim.[33]

On August 28, 2013, the Plaintiffs filed the Class Action Complaint in the U.S. District Court for the Middle District of Tennessee. On December 20, 2013, the Judicial Panel on Multidistrict Litigation transferred this action to be consolidated with the multidistrict litigation pending before this Court.[34] In their Amended Class Action Complaint, the Plaintiffs originally asserted claims for Breach of Express Warranty (Count I), Breach of Implied Warranties (Count II), Negligence/Negligent Design (Count III), Unjust Enrichment (Count IV), Fraudulent Concealment (Count V), Strict Products Liability Design Defect, Manufacturing Defect, Defect in Composition and Failure to Warn – Tennessee Products Liability Act (TPLA) (Count VI), and Declaratory Judgment (Count VII). The Defendant now moves for summary judgment as to each of the Plaintiffs.

## II. Legal Standard

Summary judgment is appropriate only when the pleadings, depositions, and affidavits submitted by the parties show no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law.[35] The

---

[32]    *Id.* ¶¶ 21-22.

[33]    *Id.* ¶ 23.

[34]    *See* Transfer Order [Doc. 39] under No. 1:14-cv-004218-TWT.

[35]    FED. R. CIV. P. 56(a).

court should view the evidence and any inferences that may be drawn in the light most favorable to the nonmovant.[36] The party seeking summary judgment must first identify grounds to show the absence of a genuine issue of material fact.[37] The burden then shifts to the non-movant, who must go beyond the pleadings and present affirmative evidence to show that a genuine issue of material fact exists.[38] "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be a sufficient showing that the jury could reasonably find for that party."[39]

## III. Discussion

### A. Michael Mazza

#### 1. Express and Implied Warranty Claims

The Defendant first moves for summary judgment as to Mazza's warranty claims. Under Tennessee law, to prevail on a breach of express warranty claim, a plaintiff must prove: "(1) Seller made an affirmation of fact intending to induce the buyer to purchase the goods; (2) Buyer was in fact induced by seller's acts; and (3) The affirmation of fact was false regardless of the seller's knowledge of

---

[36]    *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-59 (1970).

[37]    *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986).

[38]    *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986).

[39]    *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990).

the falsity or intention to create a warranty."[40] For a breach of implied warranty of merchantability claim, "a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind."[41] To be merchantable, goods must be "fit for the ordinary purposes for which such goods are used."[42] "Establishing that goods are not fit for their ordinary purposes 'requires only proof, in a general sense and as understood by a layman, that 'something was wrong' with the product.'"[43] And in order to establish a warranty of fitness for a particular purpose, "two elements must exist: (1) the seller must have reason to know the buyer's purpose, and (2) the seller must know the buyer is relying on the seller's skill or judgment to furnish the goods."[44]

The Defendant first argues that Mazza's warranty claims fail because he has failed to provide evidence establishing causation. According to the Defendant, Mazza has failed to show that his home's wind damage and roof

---

[40]     *AutoZone, Inc. v. Glidden Co.*, 737 F. Supp. 2d 936, 948 (W.D. Tenn. 2010).

[41]     *Id.* (quoting TENN. CODE ANN. § 47-2-314(1)).

[42]     *Id.* (quoting TENN. CODE ANN. § 47-2-314(2)(c)).

[43]     *Id.* (quoting *Browder v. Pettigrew*, 541 S.W.2d 402, 406 (Tenn. 1976)).

[44]     *Id.* (quoting *Dan Stern Homes, Inc. v. Designer Floors & Homes, Inc.*, No. M2008-00065-COA-R3-CV, 2009 WL 1910955, at *3 (Tenn. Ct. App. June 30, 2009)).

leaks resulted from a manufacturing defect in the Shingles.[45] For both express and implied warranty claims, "it is necessary for [the plaintiff] to demonstrate that losses were sustained as a proximate result of the breach . . . ."[46] As this Court previously noted, "[a]ll roofs will fail eventually."[47] "If the roof fails due to hail or wind damage or improper installation, the homeowner-class member has not been damaged."[48] Therefore, if Mazza cannot produce evidence that the damage to his roof resulted from a defect in the Shingles, and not some other factor, then his claim must fail. The Court concludes that the Defendant is entitled to summary judgment on this issue.

Mazza's warranty claims fail in part because he has provided insufficient evidence that a defect in the Shingles, as opposed to some other factor such as improper installation, caused the roof leaks and other roof failures. Instead, he has only provided evidence that a general defect exists in the Shingles. Mazza argues that Dean Rutila's expert opinion creates a factual dispute as to causation that allows his claims to survive summary judgment.[49] He highlights Rutila's conclusion that deterioration of the Shingles studied was so severe that

---

[45]     Def.'s Mot. for Summ. J. as to Mazza, at 8-10.

[46]     *Kopper Glo Fuel, Inc. v. Island Lake Coal Co.*, 436 F. Supp. 91, 97-98 (E.D. Tenn. 1977).

[47]     *See* [Doc. 100] at 24.

[48]     *Id.*

[49]     Mazza's Br. in Opp'n to Def.'s Mot. for Summ. J., at 7-9.

future failures, such as leaks, were inevitable, and that there were most likely other roofs out there that have already leaked due to defects in the Shingles.[50] According to Mazza, this conclusion, coupled with Mazza's personal observation of granule loss from his roof, creates a triable issue of fact as to whether the defects in the Shingles caused the damage to his roof.[51]

However, Mazza has failed to provide sufficient evidence that a reasonable jury could rely upon to conclude that defects in the Shingles caused the water leaks and wind damage that his roof experienced. Evidence that the Shingles are defective in general, and could cause leaks in general, is not enough to establish that the specific leaks in Mazza's home resulted from defects in the Shingles on his roof. To recover for these injuries, Mazza must provide evidence that the alleged defect caused his Shingles to prematurely fail, not just that the defect exists. Rutila's expert opinion does not establish that the leak in Mazza's roof resulted from a defect in the Shingles. Rutila studied 351 roofs, not including Mazza's roof.[52] Rutila admits that he was unable to show that any of the alleged defects in the Shingles, including blisters, cracks, and loss of granule surfacing, resulted in a leak in any of the roofs he studied.[53] In fact, he concedes

---

[50]     *Id.*

[51]     *Id.*

[52]     Rutila inspected Mazza's roof and Krehlik's roof, however both had already replaced their roofs prior to Rutila's inspection. *See* Rutila Dep. at 177. No expert ever inspected the Shingles on Mazza's roof prior to this replacement.

[53]     Rutila Dep. at 84-85, 124, 167.

that none of the roofs he studied had experienced any leaks as a result of manufacturing defects in the Shingles.[54] Instead, Rutila stated that he believed that the Shingles studied "will leak" in the future.[55] Mazza has provided no other evidence in support of this proposition. In fact, he has not provided any evidence of causation specific to the Shingles on his roof, except for his own personal observation of granule loss. Rutila's findings, if taken as true, merely establish that the Shingles generally have a defect, and that, in general, this defect *could* cause roofs to fail in the future. This evidence is not sufficient to establish that a manufacturing defect, as opposed of other causes, such as improper installation, inadequate ventilation, or environmental factors, caused the specific roof leaks and wind damage that Mazza has alleged.[56] Since this evidence would not allow a reasonable jury to conclude that a defect in the

---

[54]    *Id.*

[55]    *Id.* at 84-85.

[56]    *See* [Doc. 100] at 25 ("[The Plaintiffs] also must prove that the alleged defect caused their roof to prematurely fail. For the Plaintiffs that have already had their roofs replaced or repaired, this will be an especially fact-intensive inquiry."); *cf. Marcus v. BMW of N. Am., LLC*, 687 F.3d 583, 605 (3d Cir. 2012) ("[I]t is undisputed that even if Marcus could prove that Bridgestone RFTs suffer from common, class-wide defects, those defects did not cause the damage he suffered for these two tires: the need to replace them. In this sense, Marcus is no different than a class member who, seconds after buying his car, pulls off the dealership lot and runs over a bed of nails, as neither can claim a 'defect' caused his tires to go flat and need replacement. Because Marcus's common law claims require an individualized inquiry into why any particular consumer's Bridgestone RFTs went flat and had to be replaced, the District Court abused its discretion in finding that the claims satisfy the predominance requirement.").

Shingles caused his roof to leak or incur wind damage, the Plaintiff cannot recover for damages resulting from those roof failures.

Instead, Mazza has only provided evidence that defects in the Shingles caused granule loss, cracking, and blistering. Rutila concluded that "all of the shingles more likely than not have a combination of blistering, surface loss, and cracking that we observed in the 351 [roofs studied]."[57] This conclusion was based upon "the uniformity of observation[,] . . . uniformity of our laboratory observation and[,] . . . uniformity of the information we have from Atlas." This conclusion, coupled with Mazza's testimony that he personally observed cracking and blistering in the Shingles on his roof,[58] would allow a reasonable jury to conclude that Mazza's Shingles experienced blistering and cracking due to a manufacturing defect. Thus, even though Mazza failed to provide evidence that this alleged defect caused leaks and wind damage to his roof, a reasonable jury could nonetheless infer from the evidence provided that Mazza's roof suffered blistering and cracking as a result of these defects. Therefore, Mazza's warranty claims can proceed to the extent that he seeks damages for the diminution in value of the Shingles due to this granule loss, blistering, and cracking.

---

[57]     Rutila Dep. at 84.

[58]     Mazza Dep. at 50-52. Mazza's testimony that he observed such cracking, granule loss, and blistering on his roof is the only evidence offered specific to the Shingles on his roof.

The Defendant then argues that Mazza's claim for wind damage is not covered by the Atlas Limited Warranty.[59] The Defendant argues that the Atlas Limited Warranty only provided coverage for wind damage for five years. Since Mazza's roof was installed in 2004, coverage for wind damage under the Atlas Limited Warranty would have expired in 2009, four years before Mazza's wind damage in 2013.[60] Therefore, according to the Defendant, Mazza cannot pursue a claim for wind damage under the Atlas Limited Warranty. Mazza, somewhat surprisingly, rejects the applicability of the Atlas Limited Warranty and responds that the "Defendant cannot establish, as a matter of law, that *any* aspect of the Limited Warranty document it has attached to its motion governs the Plaintiff's claims in this case."[61] He contends that the Defendant cannot authenticate the warranty or prove its authority over Mazza's claims.[62]

Thus, despite the fact that Mazza attached the Atlas Limited Warranty to the Amended Class Action Complaint, and asserted a claim for breach of the Atlas Limited Warranty in the Amended Class Action Complaint, he now denies knowledge of its existence and argues that it does not apply here.[63] Consequently, the Court deems Mazza to have abandoned any claims for breach

---

[59]    Def.'s Mot. for Summ. J. as to Mazza, at 10.

[60]    *Id.*

[61]    Mazza's Br. in Opp'n to Def.'s Mot. for Summ. J., at 10-11.

[62]    *Id.* at 10-11.

[63]    *See* Am. Compl., Ex. C [Doc. 53-3]; Am. Compl. ¶¶ 82, 84.

of the Atlas Limited Warranty, and finds it unnecessary to determine whether Mazza could have alleged claims for wind damage under the Atlas Limited Warranty.

Next, the Defendant argues that Mazza's express warranty claims premised upon Atlas advertising and marketing materials fail due to lack of reliance. Specifically, the Defendant contends that Mazza has failed to produce evidence that he relied upon or even read any of the affirmations of fact in these marketing materials in deciding to choose the Shingles.[64] The Court agrees. As noted above, to prevail on a breach of express warranty claim under Tennessee law, a plaintiff must prove: "(1) Seller made an affirmation of fact intending to induce the buyer to purchase the goods; (2) Buyer was in fact induced by seller's acts; and (3) The affirmation of fact was false regardless of the seller's knowledge of the falsity or intention to create a warranty."[65] An essential ingredient of an express warranty claim is "that there be a reliance on such affirmation by the purchaser."[66]

In the Amended Class Action Complaint, the Plaintiffs allege that the Defendant created express warranties through its brochures and marketing

---

[64]     Def.'s Mot. for Summ. J. as to Mazza, at 11.

[65]     *AutoZone, Inc. v. Glidden Co.*, 737 F. Supp. 2d 936, 948 (W.D. Tenn. 2010).

[66]     *Coffey v. Dowley Mfg., Inc.*, 187 F. Supp. 2d 958, 969 (M.D. Tenn. 2002).

materials. These express warranties allegedly related to the durability, quality, and structural integrity of the Shingles.[67] They also purportedly guaranteed that the Shingles would be "free from defects," promised that the Shingles would last at least 30 years, and stated that the Shingles would conform to all applicable building codes and industry standards.[68] However, Mazza has failed to show that he relied upon these alleged representations or affirmations of fact.

In his deposition, Mazza admitted that he did not review any "materials in writing regarding Atlas Chalet Shingles."[69] Mazza did not directly buy the Shingles from the Defendant, never communicated with the Defendant prior to purchasing his home, and had never heard of the Defendant prior to purchasing his home.[70] He explicitly stated in his deposition that he did not rely upon any representations made by the Defendant about the Shingles.[71] In fact, he admitted that he did not have any choice "with respect to what type of roofing shingles were used" on his home, except for the color.[72] Thus, he could not have relied upon the Defendant's marketing materials in choosing the Shingles, since he did not make the decision to purchase the Shingles. The only representation

---

[67]    Am. Compl. ¶ 82.

[68]    *Id.* ¶¶ 83-85.

[69]    Mazza Dep. at 40.

[70]    *Id.* at 44.

[71]    *Id.*

[72]    *Id.* at 40.

made to Mazza concerning the Shingles was the builder's statement that the shingles selected for Mazza's home were "30-year shingles."[73] However, the builder, and *not* the Defendant, made this representation to Mazza. Since there is no evidence that the Defendant made any representation to Mazza concerning the Shingles, Mazza cannot maintain a claim for breach of express warranty against the Defendant.

Given this evidence, Mazza cannot establish that he relied upon any statements or affirmations of fact made by the Defendant at all, let alone the specific statements alleged in the Amended Complaint. Without such evidence, Mazza has failed to establish the essential element of reliance. The only representation concerning the Shingles that Mazza encountered – the builder's assurance that these were "30-year shingles" – was not a statement made by the Defendant. Therefore, a reasonable jury could not find that there has been a breach of express warranty under Tennessee law.[74]

Finally, Mazza's claim for breach of the implied warranty of fitness for a particular purpose fails as a matter of law. "In Tennessee, '[w]here the seller at the time of contracting has reason to know any particular purpose for which the goods are required and that the buyer is relying on the seller's skill or judgment

---

[73]    *Id.* at 34.

[74]    *Coffey v. Dowley Mfg., Inc.*, 187 F. Supp. 2d 958, 973 (M.D. Tenn. 2002) ("However, it is not clear that Coffey ever read or specifically relied on these affirmations. For that reason alone, the Court finds that no reasonable jury could find that there has been a breach of express warranty.").

to select or furnish suitable goods, there is . . . an implied warranty that the goods shall be fit for such purpose.'"[75] In order to establish a warranty of fitness for a particular purpose, "two elements must exist: (1) the seller must have reason to know the buyer's purpose, and (2) the seller must know the buyer is relying on the seller's skill or judgment to furnish the goods."[76]

The Defendant argues that this claim fails because Mazza admits that he did not have communications of any kind with the Defendant prior to purchasing his home, and that he therefore could not have relied upon the Defendant's skill or judgment in selecting the Shingles.[77] Mazza's response seems to confuse the implied warranty of fitness for a particular purpose and the implied warranty of merchantability. Mazza devotes much time explaining the implied warranty of merchantability, which is a distinct claim with distinct elements that must be proven.[78] Mazza does, however, make one responsive argument – that he has offered evidence that he relied upon the Defendant's skill or judgment to select and furnish suitable goods.[79] Mazza argues that he

---

[75] *AutoZone, Inc. v. Glidden Co.*, 737 F. Supp. 2d 936, 949 (W.D. Tenn. 2010) (quoting TENN. CODE ANN. § 47-2-315).

[76] *Id.* at 950 (quoting *Dan Stern Homes, Inc. v. Designer Floors & Homes, Inc.*, No. M2008-00065-COA-R3-CV, 2009 WL 1910955, at *3 (Tenn. Ct. App. June 30, 2009)).

[77] Def.'s Mot. for Summ. J. as to Mazza, at 12.

[78] Mazza's Br. in Opp'n to Def.'s Mot. for Summ. J., at 13-14.

[79] *Id.* at 15.

knew that he wanted a "30-year shingle," and that the Defendant conveyed to the building industry, including Mazza's builder, that the Shingles "fit the bill."[80]

However, this argument fails. "In order to create a warranty of fitness for a particular purpose, the seller must have reason to know the purpose and that the buyer is relying on the seller's skill or judgment to furnish the goods."[81] Here, the Defendant, which did not directly sell the Shingles to Mazza or even communicate with Mazza, had no reason to know the particular purpose for which Mazza purchased the Shingles, if Mazza even had a particular purpose at all. Furthermore, the Defendant did not know that Mazza was relying on its skill or judgment in choosing the Shingles for any particular purpose.[82] In fact, Mazza did not rely on the Defendant's skill or judgment *at all*. Mazza and the Defendant had no pre-purchase communications or interaction whatsoever. Therefore, it was impossible for the Defendant to have known that Mazza was relying upon its skill or judgment, if he was actually even relying on it at all. Mazza's argument that the Defendant "conveyed to the building industry" that

---

[80]     *Id.*

[81]     *Dan Stern Homes, Inc.*, 2009 WL 1910955, at *3 (citing *Alumax Aluminum Corp., Magnolia Div. v. Armstrong Ceiling Sys., Inc.*, 744 S.W.2d 907, 910 (Tenn. Ct. App. 1987)).

[82]     *Alumax Aluminum Corp.*, 744 S.W.2d at 910 ("In the present case, there is no direct evidence that seller had any reason to believe that defendant was depending upon seller to ascertain the precise dimensions of the material.").

the Shingles were fit for a particular purpose is unpersuasive because he cannot show that he relied upon this "conveyed" purpose, or that the Defendant knew he relied upon it. Consequently, the Defendant is entitled to summary judgment as to Mazza's claim for breach of the implied warranty of fitness for a particular purpose.

Therefore, Mazza's claim for breach of the implied warranty of merchantability is the only warranty claim that can survive summary judgment. And, since Mazza failed to produce evidence that defects in the Shingles caused roof leaks or wind damage to his home, he will only be able to pursue damages for granule loss, cracking, and blistering with regard to this claim.

### 2. Fraudulent Concealment

Next, the Defendant moves for summary judgment as to Mazza's fraudulent concealment claim. The Defendant argues that Mazza's fraudulent concealment claim, like his warranty claims, fails on the causation element.[83] The Court agrees. In Tennessee, "[t]he tort of fraudulent concealment is committed when a party who has a duty to disclose a known fact or condition fails to do so, and another party reasonably relies upon the resulting misinterpretation, thereby suffering injury."[84] To succeed on such a claim, a plaintiff must show that he suffered an injury as a result of relying upon the

---

[83]    Def.'s Mot. for Summ. J. as to Mazza, at 13.

[84]    *Chrisman v. Hill Home Development, Inc.*, 978 S.W.2d 535, 538-39 (Tenn. 1998).

misrepresentation.[85] Here, as explained above, Mazza has failed to establish that the injuries he suffered resulted from defects in the Shingles, as opposed to other factors such as wind or hail damage. Instead, Mazza has only provided sufficient evidence of causation as to blistering, cracking, and granule loss. However, due to the economic loss doctrine, he cannot assert a claim for fraudulent concealment based upon such injuries.[86] Therefore, since Mazza has not shown that he suffered a cognizable injury under Tennessee law, this claim fails as a matter of law.[87]

### 3. Attorneys' Fees

The Defendant is also entitled to summary judgment as to Mazza's request for attorneys' fees. "[U]nder Tennessee law, attorney's fees generally

---

[85] *Bradberry v. John Hancock Mut. Life Ins. Co.*, 222 F.R.D. 568, 571 (W.D. Tenn. 2004).

[86] *See* [Doc. 78] at 12 ("The economic loss rule 'precludes recovery in tort when a product damages itself without causing personal injury or damage to other property.'") (quoting *Lincoln Gen. Ins. Co. v. Detroit Diesel Corp.*, 293 S.W.3d 487, 489 (Tenn. 2009)); *Milner v. Windward Petroleum, Inc.*, No. 06-2563, 2007 WL 9706514, at *6 (W.D. Tenn. May 31, 2007) ("Where the 'alleged fraud . . . pertains to the character and quality of the product that is the subject matter of the contract,' the remedy lies in contract, not tort.").

[87] Furthermore, since Mazza has failed to show he relied upon any statements or affirmations of fact made by the Defendant, it is also very unlikely that he has produced sufficient evidence that he reasonably relied on any alleged misrepresentations by the Defendant, which would also doom his claim for fraudulent concealment. *Cf. Bradberry*, 222 F.R.D. at 571 (noting that a plaintiff must reasonably rely upon a misrepresentation to succeed on a fraudulent concealment claim and that an issue of material fact existed as to "whether Plaintiffs reasonably relied on Defendant's promotional materials").

cannot be recovered absent a contractual or statutory basis for such recovery."[88]

Because there is no statutory or contractual basis for an award of attorneys'

fees, Mazza's request for attorneys' fees fails.

### 4. Declaratory Judgment

Finally, the Defendant moves for summary judgment as to Mazza's

request for declaratory judgment. Mazza concedes that his claim for declaratory

relief "was justly pled in his role as class representative, [and] is not applicable

to the prosecution of his individual claims."[89] He notes that he preserves "that

cause of action for appellate review of the Court's denial of class certification."

The Court therefore deems this claim to be abandoned.

### B. Robert Johnson

Next, the Defendant moves for summary judgment as to the Plaintiff

Robert Johnson. The Defendant argues that Johnson's claims fail due to lack of

causation, that alleged wind damage is not covered by the Atlas Limited

Warranty, that Johnson's warranty claims fail due to lack of reliance, that

Johnson's request for attorneys' fees fails, and that Johnson's request for

declaratory relief fails. The Court addresses each of these arguments in turn.

---

[88] *McBride v. Shutt*, No. 00-1302, 2002 WL 1477211, at *6 (W.D. Tenn. July 2, 2002) (citing *State ex rel. Orr v. Thomas*, 585 S.W.2d 606, 607 (Tenn. 1979)).

[89] Mazza's Br. in Opp'n to Def.'s Mot. for Summ. J., at 2 n.1.

## 1. Warranty and Fraudulent Concealment

First, as with Mazza, the Defendant is entitled to summary judgment as to Johnson's warranty and fraudulent concealment claims to the extent that Johnson seeks leak-related damages. Like Mazza, Johnson has failed to provide sufficient evidence as to causation.[90] As noted above, causation is an essential element for warranty and fraudulent concealment claims under Tennessee law. If Johnson's roof experienced leaks or other damage because of other causes such as weather or improper installation, then he would not be able to recover against the Defendant for defects in the Shingles.

Instead, Johnson must provide evidence that defects in the Shingles caused these alleged injuries – which Johnson has failed to do. In fact, Rutila inspected Johnson's roof on May 28, 2014.[91] Rutila admitted that he could not conclude that a defect in the Shingles caused a leak or any other type of roof failure in the roofs that he studied, including Johnson's roof.[92] As noted above, Rutila studied 351 roofs, and admits that he was unable to show that any of the alleged defects in the Shingles, including blisters, cracks, and loss of granule

---

[90]    Johnson admits that his roof did not experience any leaks as a result of defects in the Shingles. *See* Johnson Dep. at 82-83. Furthermore, Johnson admits that, "to [his] knowledge," there has been no water damage at his home due to defects in the Shingles. *See id.* at 83-84.

[91]    Def.'s Mot. for Summ. J. as to Johnson, Ex. F [Doc. 102-8].

[92]    Rutila Dep. at 84-85, 124, 167.

surfacing, resulted in a leak in any of the roofs he studied.[93] He concedes that none of the roofs he studied had experienced any leaks as a result of manufacturing defects in the Shingles.[94] Instead, Rutila stated that he believed that the Shingles studied "will leak" in the future.[95] Johnson has provided no other evidence in support of the causation element. A reasonable jury, based upon this evidence, could not conclude that a manufacturing defect in the Shingles caused Johnson's roof to leak or experience any other type of failure event. Therefore, Johnson cannot seek damages related to such roof failures.

However, like Mazza, Johnson can still pursue damages related to cracking in his Shingles. Johnson testified in his deposition that he went on to his roof after hearing about problems with Shingles and observed "[a] tremendous amount of cracking."[96] Two months later Johnson filed his warranty claim with the Defendant.[97] This personal observation of cracking on his roof, coupled with Rutila's conclusion concerning cracking on the roofs studied, would allow a reasonable jury to conclude that a manufacturing defect in the Shingles resulted in the cracking observed on Johnson's roof. Rutila opined that "all of the shingles more likely than not have a combination of blistering, surface loss,

---

[93]     *Id.*

[94]     *Id.*

[95]     *Id.* at 84-85.

[96]     Johnson Dep. at 60.

[97]     *Id.* at 60-61.

and cracking that we observed in the 351 [roofs studied]."[98] This expert opinion, along with Johnson's observation of cracking, is sufficient evidence, even if weak, of the causal connection between a manufacturing defect and cracking in Johnson's Shingles. Therefore, Johnson can seek damages for the diminution in value of the Shingles due to this cracking.

## 2. Wind Damage

Next, the Defendant argues that Johnson cannot recover for his wind damage under the Atlas Limited Warranty.[99] The Defendant argues that the Atlas Limited Warranty's coverage for wind damage expired in 2011, five years after the installation of the Shingles, and that Johnson's wind damage occurred in 2015.[100] Therefore, according to the Defendant, Johnson cannot pursue a claim for wind damage under the Atlas Limited Warranty. Johnson, like Mazza, rejects the applicability of the Atlas Limited Warranty. He responds that the "Defendant cannot establish, as a matter of law, that *any* aspect of the Limited Warranty document it has attached to its motion governs the Plaintiff's claims in this case" and that the Defendant cannot authenticate the warranty or prove

---

[98]     Rutila Dep. at 84.

[99]     Def.'s Mot. for Summ. J. as to Johnson, at 8.

[100]     *Id.*

its authority over Johnson's claims.[101] Johnson insists that he was not provided a copy of the "purported limited warranty document."[102]

Thus, despite the fact that Johnson attached the Atlas Limited Warranty to the Amended Class Action Complaint, and asserted a claim for breach of the Atlas Limited Warranty in the Amended Class Action Complaint, he now denies knowledge of its existence and argues that it does not apply here.[103] Consequently, the Court deems Johnson to have abandoned any claims for breach of the Atlas Limited Warranty, and finds it unnecessary to determine whether Johnson could have alleged claims for wind damage under the Atlas Limited Warranty. The Court will instead address the Plaintiff's remaining express warranty claims based upon the Defendant's advertising and marketing materials.

### 3. Advertising and Marketing Materials

The Defendant next argues that Johnson's express warranty claims based upon the Defendant's advertisements and promotional materials fails on the reliance element.[104] Specifically, the Defendant asserts that Johnson has failed to show that he relied upon or even read any of the alleged affirmations of fact

---

[101]     Johnson's Br. in Opp'n to Def.'s Mot. for Summ. J., at 10-11.

[102]     *Id.* at 10.

[103]     *See* Am. Compl., Ex. C [Doc. 53-3]; Am. Compl. ¶¶ 82, 84.

[104]     Def.'s Mot. for Summ. J. as to Johnson, at 9.

in these marketing materials in choosing to purchase the Shingles.[105] As already noted, to prevail on a breach of express warranty claim under Tennessee law, a plaintiff must prove: "(1) Seller made an affirmation of fact intending to induce the buyer to purchase the goods; (2) Buyer was in fact induced by seller's acts; and (3) The affirmation of fact was false regardless of the seller's knowledge of the falsity or intention to create a warranty."[106] An essential ingredient of an express warranty claim is "that there be a reliance on such affirmation by the purchaser."[107]

In the Amended Class Action Complaint, the Plaintiffs allege that the Defendant created express warranties through its brochures and marketing materials. As noted above, these alleged express warranties related to the durability, quality, and structural integrity of the Shingles, guaranteed that the Shingles would be "free from defects," promised that the Shingles would last at least 30 years, and stated that the Shingles would conform to all applicable building codes and industry standards.[108] However, Johnson has failed to show that he relied upon these alleged representations or affirmations of fact. Johnson admitted in his deposition that he did not read or see any of the

[105]    *Id.* at 9-10.

[106]    *AutoZone, Inc. v. Glidden Co.*, 737 F. Supp. 2d 936, 948 (W.D. Tenn. 2010).

[107]    *Coffey v. Dowley Mfg., Inc.*, 187 F. Supp. 2d 958, 969 (M.D. Tenn. 2002).

[108]    Am. Compl. ¶¶ 82-85.

Defendant's advertising or marketing materials regarding the Shingles.[109] Johnson never communicated with the Defendant prior to purchasing his home, and had never heard of the Defendant.[110] In fact, Johnson testified that he had no involvement or choice in selecting the shingles to be used on his home.[111] The only representation by the Defendant that Johnson encountered was packaging on leftover Shingles that he found in his attic once he had purchased his home and moved into it.[112] The packaging, which Johnson did not read until after he purchased his home, referred to a thirty year warranty.[113]

Given this evidence, Johnson cannot establish that he relied upon the alleged statements made by the Defendant in choosing to purchase the Shingles. Johnson has not shown that he relied upon any statements or affirmations of fact made by the Defendant at all, let alone the specific statements alleged in the Amended Class Action Complaint. The only representation by the Defendant that Johnson encountered – the packaging on the Shingles referring to a "thirty year warranty" – was not part of the basis of the bargain because Johnson did not see it until after he had already purchased the home. Without such evidence, he has failed to establish the essential element of reliance. Therefore, a

---

[109]     Johnson Dep. at 34-35.

[110]     *Id.* at 35-36.

[111]     *Id.* at 27.

[112]     *Id.* at 37-38.

[113]     *Id.* at 38.

reasonable jury could not find that there has been a breach of express warranty under Tennessee law.[114]

## 4. Implied Warranty of Fitness for a Particular Purpose

The Defendant then contends that it is entitled to summary judgment as to Johnson's claim for breach of the implied warranty of fitness for a particular purpose. The Defendant argues that this claim fails because Johnson and the Defendant did not have any kind of pre-purchase communications with each other.[115] The Court agrees. "In Tennessee, '[w]here the seller at the time of contracting has reason to know any particular purpose for which the goods are required and that the buyer is relying on the seller's skill or judgment to select or furnish suitable goods, there is . . . an implied warranty that the goods shall be fit for such purpose.'"[116] In order to establish a warranty of fitness for a particular purpose, "two elements must exist: (1) the seller must have reason to

---

[114] *Coffey v. Dowley Mfg., Inc.*, 187 F. Supp. 2d 958, 973 (M.D. Tenn. 2002) ("However, it is not clear that Coffey ever read or specifically relied on these affirmations. For that reason alone, the Court finds that no reasonable jury could find that there has been a breach of express warranty.").

[115] Def.'s Mot. for Summ. J. as to Johnson, at 10-11. Johnson's response confuses the implied warranty of fitness for a particular purpose and the implied warranty of merchantability. Johnson devotes much time to explaining the implied warranty of merchantability, for which the Defendant has not moved for summary judgment.

[116] *AutoZone, Inc. v. Glidden Co.*, 737 F. Supp. 2d 936, 949 (W.D. Tenn. 2010) (quoting TENN. CODE ANN. § 47-2-315).

know the buyer's purpose, and (2) the seller must know the buyer is relying on the seller's skill or judgment to furnish the goods."[117]

Here, it is undisputed that the Defendant had no reason to know of any particular purpose for which Johnson was buying the Shingles.[118] Even more so, Johnson has not shown that he had a particular purpose in mind when purchasing the Shingles. Johnson has also failed to produce evidence that he relied upon the Defendant's skill or judgment in buying the Shingles for that particular purpose, or that the Defendant knew that Johnson was relying upon its judgment. Instead, Johnson and the Defendant had no contact whatsoever before he purchased the Shingles. Johnson did not rely upon the Defendant at all in choosing the Shingles because he never had any form of contact with the Defendant prior to purchasing them. Therefore, Johnson has failed to produce sufficient evidence as to the two core elements of a claim for breach of the implied warranty of fitness for a particular purpose.

Johnson argues that this implied warranty claim should survive based upon the Defendant's "affirmation" of the "30-year" description of the

---

[117] *Id.* at 950 (quoting *Dan Stern Homes, Inc. v. Designer Floors & Homes, Inc.*, No. M2008-00065-COA-R3-CV, 2009 WL 1910955, at *3 (Tenn. Ct. App. June 30, 2009)).

[118] *Alumax Aluminum Corp.*, 744 S.W.2d at 910 ("In the present case, there is no direct evidence that seller had any reason to believe that defendant was depending upon seller to ascertain the precise dimensions of the material.").

Shingles.[119]  However, Johnson does not explain how the Defendant "affirmed"

the "30-year description" of the Shingles, or provide any evidence supporting

such an assertion. Johnson argues that the Defendant "conveyed to the building

industry" that the Shingles "fit the bill" as a "30-year shingle." "In order to

create a warranty of fitness for a particular purpose, the seller must have reason

to know the purpose and that the buyer is relying on the seller's skill or

judgment to furnish the goods."[120]  Like Mazza, Johnson does not provide

evidence for this claim or explain how the Defendant "conveyed" to the "building

industry" that the Shingles had such qualities. And, even if the Defendant

somehow did "affirm" a "30-year description," that still does not prove that the

Defendant knew of Johnson's particular desire for the Shingles, knew that

Johnson was relying upon its skill or judgment in providing such Shingles, and

furnished the Shingles based upon that skill or judgment to satisfy such a

particular purpose, as Tennessee law requires. Therefore, Johnson's claim for

breach of the implied warranty of fitness for a particular purpose fails as a

matter of law.

---

[119]     Johnson's Br. in Opp'n to Def.'s Mot. for Summ. J., at 14.

[120]     *Dan Stern Homes, Inc.*, 2009 WL 1910955, at *3 (citing *Alumax Aluminum Corp., Magnolia Div. v. Armstrong Ceiling Sys., Inc.*, 744 S.W.2d 907, 910 (Tenn. Ct. App. 1987)).

### 5. Attorneys' Fees

Next, the Defendant moves for summary judgment to Johnson's request for attorneys' fees.[121] Johnson makes no response to this argument. As explained above, attorneys' fees generally cannot be recovered under Tennessee law absent a contractual or statutory basis for such an award.[122] Because Johnson has failed to identify a statutory or contractual basis for an award of attorneys' fees, this request fails.

### 6. Declaratory Judgment

Then, the Defendant moves for summary judgment as to Johnson's request for declaratory judgment. Johnson concedes that his claim for declaratory relief "was justly pled in his role as class representative, [and] is not applicable to the prosecution of his individual claims."[123] He notes that he preserves "that cause of action for appellate review of the Court's denial of class certification." The Court therefore deems this claim to be abandoned.

## C. Linda Krehlik

Finally, the Defendant moves for partial summary judgment as to the Plaintiff Linda Krehlik. Specifically, the Defendant argues that it is entitled to

---

[121]   Def.'s Mot. for Summ. J. as to Johnson, at 11-12.

[122]   *McBride v. Shutt*, No. 00-1302, 2002 WL 1477211, at *6 (W.D. Tenn. July 2, 2002).

[123]   Johnson's Br. in Opp'n to Def.'s Mot. for Summ. J., at 3 n.1.

summary judgment as to Krehlik's claims for: (1) wind damage under the Atlas Limited Warranty; (2) warranties based upon advertising or marketing materials; (3) the implied warranty of fitness for a particular purpose; (4) fraudulent concealment; (5) attorneys' fees; and (6) declaratory judgment. The Court addresses each of these arguments in turn.

## 1. Wind Damage

First, the Defendant argues that Krehlik cannot maintain a claim for wind damage under the Atlas Limited Warranty. Specifically, the Defendant contends that Krehlik's "claim for wind related damage is untimely under the Atlas Limited Warranty since the Atlas five-year limited wind warranty expired in 2010," and Krehlik experienced wind loss in 2011.[124] Krehlik, like Mazza and Johnson, responds that the "Defendant cannot establish, as a matter of law, that *any* aspect of the Limited Warranty document it has attached to its motion governs the Plaintiff's claims in this case" and that the Defendant has failed to authenticate the warranty or show that it has authority over Krehlik's claims since Krehlik was never provided a copy of the warranty. Therefore, despite the fact that Krehlik attached the Atlas Limited Warranty to the Amended Class Action Complaint, and asserted a claim for breach of the Atlas Limited Warranty in the Amended Class Action Complaint, she now denies that it

---

[124]     Def.'s Mot. for Partial Summ. J. as to Krehlik, at 8-9.

applies in her case.[125] The Court consequently deems Krehlik to have abandoned any claims for breach of the Atlas Limited Warranty.

### 2. Advertising and Marketing Materials

The Defendant next moves for summary judgment as to Krehlik's warranty claims based upon alleged representations in its advertising and marketing materials. It argues that these claims fail because they are not included in the Atlas Limited Warranty, and because Krehlik cannot prove that she relied upon these representations. As stated above, to prevail on a breach of express warranty claim under Tennessee law, a plaintiff must prove: "(1) Seller made an affirmation of fact intending to induce the buyer to purchase the goods; (2) Buyer was in fact induced by seller's acts; and (3) The affirmation of fact was false regardless of the seller's knowledge of the falsity or intention to create a warranty."[126] An essential ingredient of an express warranty claim is "that there be a reliance on such affirmation by the purchaser."[127]

In the Amended Class Action Complaint, the Plaintiffs allege that the Defendant created express warranties through its brochures and marketing materials as to the durability, quality, and structural integrity of the Shingles,

---

[125]    *See* Am. Compl., Ex. C [Doc. 53-3]; Am. Compl. ¶¶ 82, 84.

[126]    *AutoZone, Inc. v. Glidden Co.*, 737 F. Supp. 2d 936, 948 (W.D. Tenn. 2010).

[127]    *Coffey v. Dowley Mfg., Inc.*, 187 F. Supp. 2d 958, 969 (M.D. Tenn. 2002).

that the Shingles would be "free from defects," that the Shingles would last at least 30 years, and that the Shingles would conform to all applicable building codes and industry standards. [128] However, Krehlik has failed to show that she relied upon these alleged affirmations of fact. She admits that she did not see or read any Atlas promotional materials before purchasing the Shingles.[129] In her deposition, Krehlik testified that she did not see any store displays, brochures, or written communications from the Defendant before choosing the Shingles.[130] Instead, she stated that she merely "was shown a selection of colors and I chose from that selection."[131] Even if Krehlik did view such a selection, that does not prove that she relied upon the specific affirmations that she alleges created express warranties in the Amended Class Action Complaint. She was never aware of any "representations" made by the Defendant as to the Shingles, and had no opportunity to rely on any of the Defendant's communications.[132] There is no evidence that Krehlik ever read or relied upon these alleged affirmations of fact by the Defendant. Without such evidence, she has failed to establish the essential element of reliance. Therefore, a reasonable

---

[128]     Am. Compl. ¶¶ 82-85.

[129]     Linda Krelik Dep. at 22-23, 27-28.

[130]     *Id.* at 23.

[131]     *Id.*

[132]     *Id.* at 27-28.

jury could not find that there has been a breach of express warranty under Tennessee law.[133]

Krehlik responds that, in choosing to purchase the Shingles, her builder gave her a cost allowance and told her which building supplier would be providing shingles for her development. She argues that she visited the building supplier, reviewed sample Shingles, and selected the specific color of Shingles she liked. Krehlik argues that these circumstances raise a reasonable question for the jury as to whether the Defendant's marketing messages formed the basis of the bargain for Krehlik.[134] However, a reasonable jury could not take this evidence and infer that Krehlik relied upon the Defendant's marketing materials. Krehlik admitted in her deposition that she did not see any brochures, advertisements, or written communications from the Defendant promoting the Shingles.[135] Given this admission by Krehlik, it would be irrational for a jury to conclude that Krehlik read and relied upon these specific marketing messages based upon this purported circumstantial evidence. Therefore, the Defendant is entitled to summary judgment as to these claims.[136]

---

[133]    *Coffey v. Dowley Mfg., Inc.*, 187 F. Supp. 2d 958, 973 (M.D. Tenn. 2002) ("However, it is not clear that Coffey ever read or specifically relied on these affirmations. For that reason alone, the Court finds that no reasonable jury could find that there has been a breach of express warranty.").

[134]    Krehlik's Br. in Opp'n to Def.'s Mot. for Partial Summ. J., at 6-8.

[135]    Linda Krehlik Dep. at 22-23.

[136]    Because Krehlik's express warranty claims fail due to a lack of reliance, the Court finds it unnecessary to address whether the Atlas Limited

### 3. Implied Warranty of Fitness for a Particular Purpose

Next, the Defendant moves for summary judgment as to Krehlik's claim for breach of the implied warranty of fitness for a particular purpose. "In Tennessee, '[w]here the seller at the time of contracting has reason to know any particular purpose for which the goods are required and that the buyer is relying on the seller's skill or judgment to select or furnish suitable goods, there is . . . an implied warranty that the goods shall be fit for such purpose.'"[137] In order to establish a warranty of fitness for a particular purpose, "two elements must exist: (1) the seller must have reason to know the buyer's purpose, and (2) the seller must know the buyer is relying on the seller's skill or judgment to furnish the goods."[138]

The Defendant argues that Krehlik never relied on any of the Defendant's communications in choosing the Shingles, much less any communications regarding a particular purpose for their use.[139] Krehlik's response, like Mazza's response, seems to confuse the implied warranty of fitness for a particular purpose and the implied warranty of merchantability. Krehlik spends much of

_____

Warranty limits the warranty claims that Krehlik can assert.

[137]    *AutoZone, Inc. v. Glidden Co.*, 737 F. Supp. 2d 936, 949 (W.D. Tenn. 2010) (quoting TENN. CODE ANN. § 47-2-315).

[138]    *Id.* at 950 (quoting *Dan Stern Homes, Inc. v. Designer Floors & Homes, Inc.*, No. M2008-00065-COA-R3-CV, 2009 WL 1910955, at *3 (Tenn. Ct. App. June 30, 2009)).

[139]    Def.'s Mot. for Partial Summ. J. as to Krehlik, at 11.

her time explaining the implied warranty of merchantability, for which the Defendant has not moved for summary judgment.[140] Krehlik does make one responsive argument – that she has offered evidence that "she relied on the Defendant's skill or judgment to select and furnish suitable goods."[141] Krehlik argues that she knew that she wanted a "30-year shingle," and that the Defendant conveyed to the building industry, including Krehlik's builder, that the Shingles "fit the bill."[142]

However, the Court once again finds this argument unpersuasive. "In order to create a warranty of fitness for a particular purpose, the seller must have reason to know the purpose and that the buyer is relying on the seller's skill or judgment to furnish the goods."[143] Here, the Defendant, which did not even directly sell the Shingles to Krehlik, had no reason to know the particular purpose for which Krehlik purchased the Shingles, or that Krehlik was relying on its skill or judgment in choosing the Shingles for any particular purpose.[144]

---

[140] Def.'s Reply Br. as to Krehlik, at 5 n.5.

[141] Krehlik's Br. in Opp'n to Def.'s Mot. for Partial Summ. J., at 10 (internal quotations omitted).

[142] *Id.*

[143] *Dan Stern Homes, Inc.*, 2009 WL 1910955, at *3 (citing *Alumax Aluminum Corp., Magnolia Div. v. Armstrong Ceiling Sys., Inc.*, 744 S.W.2d 907, 910 (Tenn. Ct. App. 1987)).

[144] *Alumax Aluminum Corp.*, 744 S.W.2d at 910 ("In the present case, there is no direct evidence that seller had any reason to believe that defendant was depending upon seller to ascertain the precise dimensions of the material.").

In fact, Krehlik did not rely on the Defendant's skill or judgment at all. Krehlik and the Defendant had no pre-purchase communications or interaction whatsoever. Therefore, it was impossible for the Defendant to have known that Krehlik was relying upon its skill or judgment (assuming that she was actually relying on it at all). Krehlik's argument that the Defendant "conveyed to the building industry" that the Shingles were fit for a particular purpose is unpersuasive because she cannot show that she relied upon this "conveyed" purpose, or that the Defendant knew she relied upon it. Therefore, the Defendant is entitled to summary judgment as to Krehlik's claim for breach of the implied warranty of fitness for a particular purpose.

### 4. Fraudulent Concealment

Then, the Defendant moves for summary judgment as to Krehlik's claim for fraudulent concealment. As noted above, "[t]he tort of fraudulent concealment is committed when a party who has a duty to disclose a known fact or condition fails to do so, and another party reasonably relies upon the resulting misinterpretation, thereby suffering injury."[145] To succeed on such a claim, a plaintiff must show that he suffered an injury as a result of relying upon the misrepresentation.[146]

---

[145] *Chrisman v. Hill Home Development, Inc.*, 978 S.W.2d 535, 538-39 (Tenn. 1998).

[146] *Bradberry v. John Hancock Mut. Life Ins. Co.*, 222 F.R.D. 568, 571 (W.D. Tenn. 2004).

The Defendant argues that this claim fails due to the economic loss doctrine. As noted above, the economic loss rule precludes recovery in tort when a product damages itself but causes no personal injury or damage to other property.[147] Krehlik responds that the economic loss doctrine does not apply here because the Shingles did in fact cause damage to other property. In support of this, Krehlik points to a contract from Morris Bros. Construction for the replacement of her roof.[148] The contract indicated that new felt paper, vents, and pipe collars, in addition to new shingles, were necessary for the roof replacement.[149] Thus, according to Krehlik, the defects in the Shingles caused damage to property other than the Shingles.

However, even if it is true that the felt paper, vents, and pipe collars needed to be replaced with the roof replacement, Krehlik has failed to offer evidence that the need to replace these parts resulted from defects in the Shingles, as opposed to other factors such as normal wear and tear, improper installation, and so on. This contract only shows that these parts were replaced

---

[147]     *See* [Doc. 78] at 12 (quoting *Lincoln Gen. Ins. Co. v. Detroit Diesel Corp.*, 293 S.W.3d 487, 489 (Tenn. 2009)); *Milner v. Windward Petroleum, Inc.*, No. 06-2563, 2007 WL 9706514, at *6 (W.D. Tenn. May 31, 2007) ("Where the 'alleged fraud . . . pertains to the character and quality of the product that is the subject matter of the contract,' the remedy lies in contract, not tort.").

[148]     Krehlik's Br. in Opp'n to Def.'s Mot. for Partial Summ. J., at 12-13.

[149]     Def.'s Mot. for Partial Summ. J. as to Krehlik, Ex. J [Doc. 103-12]. Although the contract is nearly illegible, the Court will construe it in the light most favorable to Krehlik.

– it provides no indication that they needed to be replaced due to a defect in the Shingles.[150] In fact, the contract noted that the roof needed to be replaced because of storm damage and hail, and that this replacement included installing new felt paper, vents, and pipe collars.[151] This lack of evidence of causation specific to a defect in the Shingles, coupled with the fact that the Plaintiffs' expert Dean Rutila failed to show that any of the roofs studied leaked due to defects in the Shingles, precludes Krehlik from asserting damages external to the Shingles themselves. As discussed at length above, because a number of factors could cause roof failures, Krehlik must offer evidence of causation. If a defect did not cause the damage to her roof, then her reliance upon misrepresentations by the Defendant concerning those alleged defects also did not cause her injuries. Therefore, since Krehlik has failed to offer evidence that a defect in the Shingles caused these alleged external injuries to other parts of the roof, she can only assert damage to the Shingles themselves – which is barred by the economic loss rule. Because Krehlik cannot establish a cognizable injury, her fraudulent concealment claim fails as a matter of law.

---

[150]     Def.'s Mot. for Partial Summ. J. as to Krehlik, Ex. J [Doc. 103-12].

[151]     Linda Krehlik Dep. at 93-94; Def.'s Mot. for Partial Summ. J. as to Krehlik, Ex. J [Doc. 103-12].

### 5. Attorneys' Fees

Next, the Defendant moves for summary judgment to Krehlik's request for attorneys' fees.[152] Krehlik makes no response to this argument. As explained above, attorneys' fees generally cannot be recovered under Tennessee law absent a contractual or statutory basis for such an award.[153] Because she has failed to identify a statutory or contractual basis for an award of attorneys' fees, this request fails.

### 6. Declaratory Judgment

Finally, the Defendant moves for summary judgment as to Krehlik's request for declaratory judgment. Krehlik concedes that her claim for declaratory relief "was justly pled in his [sic] role as class representative, [and] is not applicable to the prosecution of his [sic] individual claims."[154] She notes that she preserves "that cause of action for appellate review of the Court's denial of class certification." The Court therefore deems this claim to be abandoned.

## IV. Conclusion

For the reasons stated above, the Defendant's Motion for Summary Judgment as to the Plaintiff Michael Mazza [Doc. 101] is GRANTED in part and DENIED in part, the Defendant's Motion for Summary Judgment as to the

---

[152]    Def.'s Mot. for Partial Summ. J. as to Krehlik, at 13.

[153]    *McBride v. Shutt*, No. 00-1302, 2002 WL 1477211, at *6 (W.D. Tenn. July 2, 2002).

[154]    Krehlik's Br. in Opp'n to Def.'s Mot. for Partial Summ. J., at 3 n.2.

Plaintiff Robert Johnson [Doc. 102] is GRANTED in part and DENIED in part,

and the Defendant's Motion for Partial Summary Judgment as to the Plaintiff

Linda Krehlik [Doc. 103] is GRANTED.

SO ORDERED, this 8 day of June, 2018.


/s/Thomas W. Thrash
THOMAS W. THRASH, JR.
United States District Judge